THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERICA MILLER, individually, and as guardian for minor child, I.M., <br><br> Plaintiffs, <br><br> v. <br><br> MONROE SCHOOL DISTRICT, a political subdivision of the State of Washington, <br><br> Defendant. | CASE NO. C15-1323-JCC <br><br> ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |

This matter comes before the Court on Plaintiffs' motion for a preliminary injunction (Dkt. No. 7). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

**I.   BACKGROUND**

The factual background underlying this conflict is familiar to the parties and has been thoroughly summarized by the Court in a previous order in a related suit, *Miller v. Monroe School District, et al.*, C14-1946, Dkt. No. 16 at 2-6. Both actions pertain to the education of minor Monroe School District student, I.M., and both actions are brought by Erica Miller, individually and as I.M.'s guardian (collectively referred to as "Miller").

The present case is a partial appeal of an administrative law decision in a due process hearing. (Dkt. No. 1.) Miller requested the hearing on October 30, 2014, pursuant to 20 U.S.C. § 1415(f), the procedural safeguards section of the Individuals with Disabilities Education Act ("IDEA"). (Dkt. No. 4, Ex. 3 at 3.) The issues before the Administrative Law Judge (ALJ) were: (1) whether the Monroe School District ("District") violated the IDEA by denying I.M. a free appropriate public education ("FAPE"); (2) whether Dolan Academy ("Dolan"), a private school, was an appropriate alternative placement for I.M.; and (3) whether Miller was entitled to her requested remedies. (Dkt. No. 4, Ex. 3 at 4, 9.) The requested remedies included reimbursement for the past year's tuition at Dolan; I.M.'s prospective placement at Dolan at the District's expense; and compensatory education, including summer programs and specialized instruction. (Dkt. No. 4, Ex. 3 at 9.)

The hearing was held over a month-long period in March and April 2015. (Dkt. No. 4, Ex. 3 at 3.) The ALJ issued her decision on June 4, 2015. (Dkt. No. 4, Ex. 3 at 3.) The ALJ concluded that the District denied I.M. a FAPE at the first school he attended, Chain Lake Elementary, but did not deny I.M. a FAPE after he was transferred to another school within the District, Salem Woods Elementary. (Dkt. No. 4, Ex. 3 at 49.) As a result, the ALJ concluded that neither reimbursement for private placement nor prospective private placement was appropriate. (Dkt. No. 4, Ex. 3 at 49.) The ALJ determined that the proper remedy was six hours of social and emotional skill instruction provided to I.M. by the District. (Dkt. No. 4, Ex. 3 at 49.)

Miller appealed the ALJ's decision on August 18, 2015. (Dkt. No. 1.) Because the first day of school at Dolan was September 10, Miller immediately moved for a preliminary injunction, requesting the private placement of I.M. at Dolan at the District's expense and reimbursement of tuition incurred to date. (Dkt. No. 7 at 1.)

II. DISCUSSION

Under Fed. R. Civ. P. 65(a), the Court may issue a preliminary injunction after providing notice to the adverse party. A request for a preliminary injunction is evaluated under the four-

part test articulated in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). In so evaluating, courts weigh whether or not the party seeking the injunction has demonstrated that: (1) she is likely to suffer irreparable harm in the absence of preliminary relief; (2) the balance of equities tips in her favor; (3) she is likely to succeed on the merits; and (4) an injunction is in the public interest.[1] *Id.* at 20.

In this particular case, the resolution of the first, second, and fourth elements turn on whether I.M. was indeed denied a FAPE. Therefore the Court's analysis begins with element three: likelihood of success on the merits.

### A. Likelihood of Success on the Merits

For a preliminary injunction to be appropriate, "the moving party [need not show that she is] reasonably certain to succeed on the merits." *William Inglis & Sons Baking Co. v. ITT Continental Baking Co., Inc.*, 526 F.2d 86, 88 (9th Cir. 1975) (internal quotations omitted). Rather, where the potential harm is "sufficiently serious, it is only necessary that there be a fair chance of success on the merits." *Id.* (internal quotations omitted).

The IDEA mandates that children with disabilities receive a "free appropriate public education," or FAPE. 20 U.S.C. § 1400(c)(3). A FAPE "consists of educational instruction specially designed to meet the unique needs of a handicapped child, supported by such services as are necessary to permit the child 'to benefit' from the instruction." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 188-89 (1982). To ensure that a child receives a FAPE, the District must (1) comply with the procedures set forth in the IDEA and (2) work with the child's parents to develop an individualized educational program (IEP) that is reasonably calculated to enable the child to receive educational benefits. *Id.* at 206-07; *see also*

---

[1] Miller asserts that, when the denial of a FAPE is at issue, the irreparable harm, balance of hardship, and public interest factors are established as a matter of law. (Dkt. No. 7 at 7.) While some of the authority she cites tends to support this statement, such a broad rule has not been established by any decision binding on this Court.

20 U.S.C. § 1415(b). If a dispute arises and the parent and District are unable to agree on a resolution, the matter may be resolved with an administrative due process hearing. 20 U.S.C. § 1415(f).

When reviewing an administrative decision in an IDEA case, the Court does not employ the typical highly deferential standard of review. *See* 20 U.S.C. § 1415(i)(2)(C); *JG v. Douglas County Sch. Dist.*, 552 F.3d 786, 793 (9th Cir. 2008). Instead, the Court applies a modified *de novo* standard. *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471-73 (9th Cir. 1993). The Court gives due weight to the administrative proceedings, particularly where—as here—the administrative decision was careful, impartial, and sensitive to the complexities present. *See id.* at 1472, 1476. The Court must consider the findings carefully and address the hearing officer's resolution of each material issue. *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1466 (9th Cir. 1996). After such consideration, the Court may accept or reject the hearing officer's findings in part or as a whole. *Id.*

**1. Delay in Issuing Due Process Hearing Decision**

Turning to the merits of Miller's motion, she first asserts that the due process decision was untimely issued and thereby denied I.M. a FAPE. (Dkt. No. 7 at 15.)

The IDEA's procedural safeguards are designed to achieve its substantive objectives and are thus a crucial facet of the statute. *See Rowley*, 458 U.S. at 205-06; *JG*, 552 F.3d at 794. The due process hearing is the primary procedural protection in effectuating the IDEA's purpose. *Blackman v. Dist. of Columbia*, 277 F. Supp. 2d 71, 79 (D.D.C. 2003). Generally, a public agency must ensure that a decision is issued within 75 days of the request for the due process hearing. C.F.R. §§ 300.510(b)-(c), 300.515(a). A hearing officer may grant specific extensions of time at the request of either party. C.F.R. § 300.515(c). However, an extension beyond the 75-day period may constitute a denial of a FAPE. *See, e.g.*, *Blackman*, 277 F. Supp. 2d at 79 ("[T]he failure to provide a written determination in a timely manner after requests for an IEP meeting or a hearing have been made constitutes the denial of a free appropriate public education as

required by the IDEA."); *Dep't of Educ. v. T.G.*, 2011 WL 816808 (D. Haw. 2011) ("[W]here an educational agency has outright denied a student a timely due process hearing, the student has been deprived of a FAPE and need not show prejudice in order to demonstrate injury."). "Procedural flaws in the IEP process do not always amount to the denial of a FAPE." *L.M. ex rel. Sam M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 909 (9th Cir. 2009). However, "procedural inadequacies that result in the loss of educational opportunity . . . clearly result in the denial of a FAPE." *Id.*(internal quotations omitted).

Here, Miller requested a hearing on October 30, 2014. (Dkt. No. 4, Ex. 3 at 3.) It was the District's job to see that a decision was issued within 75 days. *See* C.F.R. §§ 300.510(b)-(c), 300.515(a). However, due to the District's repeated requests for continuances over Miller's objections, the ALJ did not issue a decision until June 4, 2015. (Dkt. No. 7 at 15; Dkt. No. 4, Ex. 3 at 3.) This was 142 days past the deadline for issuing a decision, nearly three times longer than the regulations contemplate. During this time, I.M.'s education was in flux. It was unclear whether the District provided him an appropriate placement, and Miller incurred costs from his placement at Dolan in the interim. Because of this, the District denied I.M. a FAPE during the time from which the due process decision was due to the time it was actually issued.

The District does not deny or even directly address Miller's assertions regarding the delay. It does argue that the IDEA's "stay put" provision required I.M. to remain at Salem Woods during the pendency of the due process hearing and appeal. (Dkt. No. 19 at 3-4.) Under 20 U.S.C. § 1415(j), "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." However, the District failed to comply with the IDEA's crucial procedural requirements regarding the timeline of these proceedings. This failure negates the "stay put" requirement during the period of time that the due process decision was delinquent.

### 2. Denial of FAPE at Chain Lake

Miller next asserts that, once I.M. was denied a FAPE at Chain Lake, the only remaining question was whether Dolan was an appropriate placement. (Dkt. No. 7 at 15.) This position imposes a one-strike policy on the District: if one public school is unable to provide appropriate special education, all other schools within the District are deemed inadequate by association. Miller does not provide support for this assertion, nor does the Court find any in the IDEA. The District is required to provide I.M. an education that is free and appropriate. 20 U.S.C. § 1400(c)(3). While this could be achieved through placement at Dolan at the District's expense, it could also be achieved through placement at another public school better equipped to educate I.M. than Chain Lake. Thus, any FAPE denials at Chain Lake would not preempt an examination of the education provided at Salem Woods.

### 3. IEP Violations at Salem Woods

Miller alleges that the District committed multiple violations of I.M.'s IEP while he attended Salem Woods. (Dkt. No. 7 at 7-14.)

#### a. Isolation Safeguards

First, Miller argues that the District failed to employ the isolation safeguards in I.M.'s IEP. (Dkt. No. 7 at 8.) On September 19, 2013, after the incidents at Chain Lake, I.M.'s IEP was amended to require that "isolation would occur in the front office, and would not exceed 20 minutes. At 20 minutes, [Miller] would receive a call and I.M. would be provided an opportunity to change seats, use the bathroom to wash his face, etc." (Dkt. No. 8, Ex. 3 at 1-2.) Miller asserts that the Salem Woods staff did not comply with these requirements. (Dkt. No. 7 at 9-12.)

At Salem Woods, unlike Chain Lake, there was no quiet room[2] in the front office area. (Dkt. No. 4, Ex. 3 at 27.) Instead, staff members prepared a small room, previously an office, to

---

[2] Throughout the briefing and the record, this room is referred to by many names, including the "isolation room" and the "quiet room." Because the word "isolation" has legal significance in this context, the Court refers to the room as the "quiet room."

be I.M.'s quiet room. (Dkt. No. 4, Ex. 3 at 27.)

On November 20, 2013 at 9:35 a.m., special education teacher Mairead Kinney and paraeducator Trina Eriks took I.M. to the quiet room. (Dkt. No. 8, Ex. 5 at 1.) After 20 minutes in the room, I.M. had become calm and chose to leave. (Dkt. No. 4, Ex. 3 at 27.) Once outside the quiet room, however, I.M. hit Kinney and tried to run away. (Dkt. No. 4, Ex. 3 at 27.) Kinney and Eriks took I.M. back to the quiet room. (Dkt. No. 4, Ex. 3 at 27.) He remained in the room until either 10:15 or 10:30. (*See* Dkt. No. 8, Ex. 5 at 3; Dkt. No. 8, Ex. 13 at 2.) Kinney and Eriks remained in the room with I.M. the entire time he was in the quiet room. (Dkt. No. 4, Ex. 3 at 27.) The District phoned Miller to notify her at 3:17 p.m. (Dkt. No. 8, Ex. 5.)

On November 21, 2013, Kinney and Eriks took I.M. to the quiet room at 12:50 p.m. (Dkt. No. 8, Ex. 6 at 1.) He remained in the quiet room for 20 minutes, after which he was "not calm and triggered [a] second 20 minute break." (Dkt. No. 8, Ex. 6 at 1.) I.M. remained in the quiet room at his own request "to use more sensory tools to de-escalate." (Dkt. No. 4, Ex. 3 at 28-29.) Kinney and Eriks remained in the room with I.M. the entire time he was in the quiet room. (Dkt. No. 4, Ex. 3 at 27.) The District phoned Miller to notify her the next day, November 22, at 11:47 a.m. (Dkt. No. 8, Ex. 6 at 1.)

The ALJ found that no IEP violations occurred, because Kinney and Eriks always stayed in the quiet room with I.M., meaning I.M. was never left alone and thus never isolated. (Dkt. No. 4, Ex. 3 at 39.) Miller asserts that the ALJ's interpretation is contrary to law, because "it is illegal to leave a child unattended in seclusion." (Dkt. No. 7 at 11.) She cites WAC 392-172A-03130(2), which requires an "adult responsible for supervising the student [to] remain in visual or auditory range of the student." It does not, however, state that it is illegal to leave a child alone in a room. To the contrary, former RCW 28A.600.485(1)(a), applicable at that time, defines isolation as "excluding a student from his or her regular instructional area and restricting the student <u>alone</u> within a room or any other form of enclosure, from which the student may not leave." (Emphasis added.) Had I.M. been left alone in the quiet room, the IEP's isolation requirements would have

ORDER GRANTING IN PART AND DENYING IN
PART PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
PAGE - 7

been triggered and, based on this record, violated. However, Kinney and Eriks remained with I.M. in the quiet room at all times. (Dkt. No. 4, Ex. 3 at 27.) Accordingly, the ALJ properly found that no isolation—and therefore no violation of the isolation requirements—occurred.

### b. Documentation of Aversive Interventions

Second, Miller asserts that the District failed to document and inform her of physical restraints that occurred while I.M. was at Salem Woods. (Dkt. No. 7 at 12.) Specifically, she asserts that evidence was presented at the hearing—but not previously communicated to Miller—that I.M. was placed in a floor hold once or twice and in a two-person hold at least once while in the quiet room. (Dkt. No. 7 at 12-13; *see also* Dkt. No. 8, Ex. 7 at 104-05, 157-58.) However, the record contains staff reports describing holds that occurred in the quiet room, which were sent to Miller after the incident. (Dkt. No. 8, Exs. 5, 6.) Miller does not show that the holds described in the reports differ from the holds described in the hearing testimony.

### c. Refusal to Convene IEP Meeting

Third, Miller alleges that the District refused to convene an IEP meeting upon Miller's November 26, 2013 request. (Dkt. No. 7 at 13.) Miller asserts that the ALJ's holding to the contrary was not supported by factual findings. (Dkt. No. 7 at 13.) However, the ALJ made several findings in support of this conclusion. (See Dkt. No. 4, Ex. 3 at 30-31.) These findings show that the District asked Miller to identify her particular concerns prior to scheduling an emergency meeting and that Miller did not do so. (Dkt. No. 4, Ex. 3 at 30.) Miller then notified the District that she would provide I.M. home-based instruction, obviating the need for an IEP meeting. (Dkt. No. 4, Ex. 3 at 30.)

### 4. Inadequacies of Current IEP

Miller further alleges that I.M.'s current IEP is inappropriate and was prepared in violation of the IDEA. (Dkt. No. 7 at 15.)

### a. Meaningful Participation

First, Miller argues that she was denied meaningful participation in the current IEP's

1   creation. (Dkt. No. 7 at 16.) Specifically, Miller asserts that the District created the IEP without

2   her participation and ignored the input she provided at the September 26 meeting to discuss the

3   new IEP.[3] (Dkt. No. 7 at 16-17.) Miller notes that the District intends to implement the

4   September 26 IEP should I.M. return this fall. (Dkt. No. 7 at 17; Dkt. No. 8, Ex. 27 at 2.)

5         "Among the most important procedural safeguards [in the IDEA] are those that protect

6   the parents' right to be involved in the development of the child's educational plan." *Amanda J.*

7   *v. Clark County Sch. Dist.*, 267 F.3d 877, 882 (9th Cir. 2001). The IDEA ensures that parents

8   have the opportunity to participate in meetings and examine records regarding the child's

9   educational placement. 20 U.S.C. § 1415(b). "A school district violates IDEA procedures if it

10  independently develops an IEP, without meaningful parental participation, and then simply

11  presents the IEP to the parent for ratification." *Ms. S. v. Vashon Island Sch. Dist.*, 337 F.3d 1115,

12  1131 (9th Cir. 2003). In other words, the District cannot enter an IEP meeting with a "take it or

13  leave it" attitude. *Id.* However, a parent does not have veto power over individual provisions of

14  the IEP. *Id.*

15        Here, the District drafted a proposed IEP prior to the September 26 meeting, without

16  Miller's participation, and provided it to her on September 24 for her review. (Dkt. No. 8, Ex.

17  28.) The proposed IEP incorporated an amended aversive intervention plan (AIP) providing for

18  reduced physical interventions, as well as I.M.'s previous behavior intervention plan (BIP),

19  which permitted instructors to place I.M. isolation should I.M. exhibit certain unsafe behavior.

20  (Dkt. No. 8, Ex. 31 at 1; Dkt. No. 8, Ex. 2 at 4.) At the meeting, Miller objected to the BIP and

21  the AIP, stating that she did not want any physical restraints or isolation included in the IEP.

---

[3] Miller also complains that her attorney was not permitted to attend the meeting. (Dkt. No. 7 at 17.) However, she does not establish that this was a violation of the IDEA. Regarding legal representation, the IDEA provides only that, at a preliminary meeting before a due process hearing, a parent must be represented *if* the District is represented. 20 U.S.C. § 1415(f)(B)(i)(III). Moreover, the record shows that Miller was given the choice to proceed without an attorney or reschedule the meeting for a time when the District's attorney could also attend. (Dkt. No. 8, Ex. 27 at 1.) Miller opted to proceed without representation. (Dkt. No. 8, Ex. 27 at 1.)

(Dkt. No. 8, Ex. 31 at 9.) She proposed that I.M. be placed at Dolan. (Dkt. No. 8, Ex. 31 at 10.) She also submitted a report by Dr. Jasmine Low, I.M.'s pediatrician, who recommended that I.M. be placed at Dolan. (Dkt. No. 8, Ex. 31 at 8.) After the meeting, the District informed Miller that it would be implementing the IEP as presented. (Dkt. No. 8, Ex. 27 at 2.)

Essentially, the question is whether the District violated the IDEA by not incorporating Miller's proposals that (1) physical restraints and isolations be completely removed from the IEP and (2) I.M. be placed at Dolan rather than Salem Woods. The Court answers this question in the negative. The September 26 IEP incorporated terms from I.M.'s prior IEP, with an amended AIP that addressed Miller's concern about physical intervention by reducing the circumstances in which it may be used. (*See* Dkt. No. 8, Ex. 31 at 1.) The District's choice to preserve some ability to physically restrain I.M. is not unreasonable, in light of the evidence that I.M. reacts physically to difficult situations and has harmed multiple educators.[4] (*See* Dkt. No. 4, Ex. 3 at 14-18, 27-28.) The District gave Miller the ability to review the IEP prior to the meeting and ample time to present her concerns at the meeting. (*See* Dkt. No. 8, Ex. 27 at 1-2, Ex. 28, Ex. 31 at 8-10.) The District reviewed the information provided from Dr. Low. (Dkt. No. 8, Ex. 27 at 3.) It ultimately concluded that Salem Woods was an appropriate placement for I.M. (*See* Dkt. No. 8, Ex. 27 at 2.) The District did not adopt a "take it or leave it" approach, and Miller does not have the power to dictate particular terms of the IEP. *See Ms. S.*, 337 F.3d at 1131. Miller has not shown that she was denied meaningful participation in the creation of the IEP.

### b. Content of IEP

Second, Miller challenges the content of the September 26 IEP, arguing that: (1) the District lacked meaningful experience with I.M. prior to creating the IEP; (2) the District failed

---

[4] Importantly, any future use of physical restraint or isolation is limited by the law to situations in which I.M.'s behavior poses an imminent likelihood of serious harm to himself or another person. *See* RCW 28A.600.485(3)(b); SUBSTITUTE H.B. 1240, 64th Leg., Reg. Sess. (Wash. 2015).

to include input from Janet Dolan, Dr. Low, or therapist Lindsay Beard; and (3) the District included outdated goals in the IEP. (Dkt. No. 7 at 17-20.) The District responds that these arguments were not presented to the ALJ. (Dkt. No. 19 at 15.) If claims for relief under the IDEA are not raised in front of a hearing officer, such claims cannot be raised for the first time on appeal to the district court. *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 952 (9th Cir. 2009).

Miller alleges that "the defects in the IEP were . . . designated as issues below in sections 'v' and 'vi' of the [ALJ's] issue statement." (Dkt. No. 23 at 7.) Sections v and vi enumerate several alleged defects in the IEP. (Dkt. No. 4, Ex. 3 at 6-7.) However, those defects relate to Miller's input in the IEP, while the defects identified on appeal focus on the input of others. (*Compare* Dkt. No. 4, Ex. 3 at 6-7 *with* Dkt. No. 7 at 17-20; *see also* Dkt. No. 4, Ex. 1 at 11-14, 18-19.) In addition, the defects alleged below make no mention of specific goals, outdated or otherwise. (*See* Dkt. No. 4, Ex. 3 at 6-7; *see also* Dkt. No. 4, Ex. 1 at 11-14, 18-19.)

Miller further alleges that "the defects in the IEP serve to establish that the District cannot provide I.M. with meaningful educational benefit, further supporting private placement at Dolan." (Dkt. No. 23 at 7.) But, both the District's alleged failings and the appropriateness of placement at Dolan are issues that must be presented below.

In sum, with the exception of the unlawful delay in issuing the due process decision, Miller fails to show a likelihood of success in her challenge to the ALJ's decision.

**B.** <u>Remaining Elements</u>

Because the Ninth Circuit applies a "sliding scale approach" to motions for preliminary injunction, a plaintiff's failure to establish a likelihood of success on the merits is not fatal to her motion. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). A preliminary injunction may still be issued where the plaintiff raises "serious questions going to the merits" and shows that the balance of hardships tips sharply towards the plaintiff, that there is a likelihood of irreparable injury, and that the injunction is in the public interest. *Id.* at 1135.

Here, however, these factors are intimately tied to Miller's likelihood of success on the

merits, *i.e.*, demonstrating that the District violated the IDEA and denied I.M. a FAPE. Without demonstrating this element, Miller cannot show (a) that the balance of hardships tips her way, when she asks the District to pay for an education it could legally provide at one of its schools; (b) that there is a likelihood of irreparable injury, when she has not shown that the education at Salem Woods falls below legal standards; or (c) that there is a strong public interest in placing I.M. at a private institution at public expense. Therefore, the Court finds that, to the extent Miller fails to show a likelihood of success, a preliminary injunction would be inappropriate.

### III.   CONCLUSION

The Court understands and appreciates that Miller, as a parent, wants what is best for her child. However, with the exception of the hearing decision delay, Miller has not demonstrated that the District has violated its legal responsibilities to I.M. The Court GRANTS Miller's request for a preliminary injunction regarding the reimbursement of tuition costs incurred from January 13, 2015 to June 4, 2015. The injunctive relief sought is otherwise DENIED.[5]

DATED this 16 day of September 2015.

_John C. Coughenour_
John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[5] In addition, the Court GRANTS the District's motion to strike (Dkt. No. 27).