THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ERICA MILLER, individually, and as guardian for minor child, I.M.,<br><br>Plaintiffs,<br><br>v.<br><br>MONROE SCHOOL DISTRICT, a political subdivision of the State of Washington,<br><br>Defendant. | CASE NO. C15-1323-JCC<br><br>ORDER DENYING MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiffs' motion for summary judgment (Dkt. No. 44), Plaintiffs' motion for attorney fees (Dkt. No. 47), Defendant's motion to strike (Dkt. No. 51), and Defendant's motion to dismiss counterclaim (Dkt. No. 50). Having thoroughly considered the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion to strike, DENIES the motion for summary judgment, GRANTS IN PART the motion for attorney fees, and GRANTS the motion to dismiss counterclaim.

## I.    BACKGROUND

The factual background of this case is deeply familiar to both the parties and the Court. Plaintiffs Erica Miller and I.M. ("Miller," collectively) now move for summary judgment, asking the Court to find that the administrative law judge (ALJ) erred in concluding that Defendant

Monroe School District did not deny I.M. a free appropriate public education (FAPE) at Salem Woods Elementary. (Dkt. No. 44.)

## II.   DISCUSSION

### A.   Motion to Strike

As a preliminary matter, the District moves to strike the declarations of Erica Miller (Dkt. No. 45) and Erika Krikorian (Dkt. No. 46) and exhibits thereto. (Dkt. No. 51 at 24.) The District argues that this evidence was not previously in the administrative record. (*Id.*)

The Individuals with Disabilities Education Act (IDEA) provides that the Court "shall hear additional evidence at the request of a party." 20 U.S.C. §§ 1415(i)(2)(C)(ii); *see also* WAC § 392-172A-05115 ("In any action brought under [the Washington Rules for the Provision of Special Education], the court . . . [h]ears additional evidence at the request of a party."). "Thus, judicial review in IDEA cases differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir. 1993). The Court has the discretion to determine whether to consider the evidence. *Id.* at 1473.

Here, the Court exercises its discretion to consider the submitted evidence in the hopes that this matter will finally be resolved. The District's motion to strike is DENIED.

### B.   Motion for Summary Judgment

Miller seeks reversal of the ALJ's finding that the aversive interventions performed at Salem Woods did not deny I.M. a FAPE. (Dkt. No. 44 at 2.) Miller asserts that I.M. was denied a FAPE based on three violations of his individual education plan (IEP): (1) isolations that were not held in the front office; (2) the District's failure to call Miller after I.M. was in isolation for 20 minutes; and (3) the District's failure to allow I.M. to change locations after he was in isolation for 20 minutes. (Dkt. No. 44 at 8-10.)

####   1.   Review of IDEA Cases

When reviewing a motion for summary judgment in an appeal from an IDEA hearing, the

1    Court does not apply the typical summary judgment standard. *See Ojai*, 4 F.3d at 1474 (9th Cir.

2    1993); *see also Harris v. Nenana City Pub. Schs.*, 50 F.3d 14, 1995 WL 25115 at *1 (9th Cir.

3    Jan. 23, 1995) ("Under the IDEA procedures, the motion for summary judgment is simply the

4    procedural vehicle for asking the judge to decide the case on the basis of the administrative

5    record."). Nor does the Court employ the typical highly deferential standard of review of agency

6    decisions. *See* 20 U.S.C. § 1415(i)(2)(C); *JG v. Douglas County Sch. Dist.*, 552 F.3d 786, 793

7    (9th Cir. 2008). Instead, the Court applies a modified *de novo* standard. *Ojai*, 4 F.3d at 1471-73.

8    The Court gives due weight to the administrative proceedings, particularly where—as here—the

9    administrative decision was careful, impartial, and sensitive to the complexities present. *See id.*

10   at 1472, 1476. The Court must consider the findings carefully and address the hearing officer's

11   resolution of each material issue. *County of San Diego v. Cal. Special Educ. Hearing Office*, 93

12   F.3d 1458, 1466 (9th Cir. 1996). After such consideration, the Court may accept or reject the

13   hearing officer's findings in part or as a whole. *Id.*

14        2.   <u>Analysis</u>

15        Miller's challenge fails. First, as this Court has already stated (*see* Dkt. No. 28 at 7-8),

16   I.M. was never placed in isolation. Former Wash. Rev. Code § 28A.600.485(1)(a), applicable at

17   that time, defines isolation as "excluding a student from his or her regular instructional area and

18   restricting the student *alone* within a room or any other form of enclosure, from which the

19   student may not leave." (Emphasis added.) The ALJ found that no IEP violations occurred,

20   because the evidence showed that special education teacher Mairead Kinney and paraeducator

21   Trina Eriks always stayed in the quiet room with I.M., meaning I.M. was never left alone. (Dkt.

22   No. 4, Ex. 3 at 39.) This Court previously affirmed this conclusion:

23        Had I.M. been left alone in the quiet room, the IEP's isolation requirements would
          have been triggered and, based on this record, violated. However, Kinney and
24        Eriks remained with I.M. in the quiet room at all times. Accordingly, the ALJ
          properly found that no isolation—and therefore no violation of the isolation
25        requirements—occurred.

26   (Dkt. No. 28 at 7-8.) The Court again upholds that conclusion here.

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT

1  Miller argues that, throughout the events, the District interchangeably used the terms

2  "seclusion" and "isolation."[1] (Dkt. No. 44 at 12.) But the language used by the District does not

3  determine whether the District violated the relevant regulations or I.M.'s IEP.[2] Rather, what

4  dictates are the relevant laws and what actually occurred. And, as noted above, these factors do

5  not point to a violation.

6  Miller further maintains that "[t]he evidence shows that I.M. was alone for the majority

7  of the time he was locked in Room 503." (Dkt. No. 44 at 11 n.7.) She provides no supporting

8  authority for this statement, which directly contradicts the weight of evidence at the hearing.

9  Moreover, even if violations of I.M.'s IEP did occur, they did not constitute a denial of a

10  FAPE. "There is no statutory requirement of perfect adherence to the IEP, nor any reason rooted

11  in the statutory text to view minor implementation failures as denials of a free appropriate public

12  education." *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811 (9th Cir. 2007). "[O]nly material

13  failures to implement an IEP constitute violations of the IDEA." *Id.* at 819.

14  Regarding the location requirement, Miller requested that isolations be held in the front

15  office at Chain Lake for "an additional set of eyes on the situation." AR 839-40. At Salem

16  Woods, although there was no front office, there was a policy that Principal Janna Dmochowsky

17  would be contacted every time I.M. was placed in the quiet room so that she could observe and

18  supervise. AR 2071-72. This addressed the "additional eyes" concern, making the lack of front

19  office a minor implementation failure.

20  Regarding the phone call and location change requirements, these safeguards were

21  adopted to ensure that I.M. was not placed in lengthy isolations and to allow Miller to "be part of

22  the team that decides what happens next." *See* AR 647-48. On November 20, I.M. spent an initial

23

24

25  [1] Miller also notes that the Court referred to "seclusions" at Salem Woods in its summary judgment order in the civil action. (Dkt. No. 44 at 11; *see also* Dkt. No. 46-18.) The Court did

26  not use the term "isolation." Nor was the term "isolation" at issue in the civil action.
   [2] I.M.'s IEP, like the WAC, uses the term "isolation." (Dkt. No. 8, Ex. 3 at 1-2.)

1    20-minute period in the quiet room. AR 2281. No violation of his IEP occurred at this time.

2    Shortly thereafter, he was returned to the quiet room for a period of time between 15 and 30

3    minutes. AR 2283; Dkt. No. 30-2 at 614; Dkt. No. 46-7 at 4-5. If this period exceeded 20

4    minutes, it was a technical violation of I.M.'s IEP; however, it ended shortly thereafter, meaning

5    there is little to no chance that a phone call to Miller or a change in location would have

6    materially impacted the situation. On November 21, I.M. spent over 20 minutes in the quiet room

7    without an immediate phone call to Miller or change in location. See AR 2294. But, the evidence

8    shows that I.M. himself requested the additional time to calm down. AR 2294. Given this

9    request, the time in the quiet room did not implicate the concerns underlying the IEP

10   requirements. Ultimately, there is no evidence that the aversive interventions at Salem Woods

11   rose to the level of a material violation of the IDEA.

12          It is abundantly clear that this matter is emotionally charged on both sides. The Court

13   does not deny that this experience has been difficult for Miller and I.M. At the same time, the

14   Court recognizes the efforts by the District in a similarly difficult position. Simply put, while

15   Miller may be unhappy with the treatment I.M. received, she again fails to demonstrate that the

16   District is liable as a matter of law. The motion for summary judgment is DENIED.

17   **C.  Motion for Attorney Fees**

18          Miller moves for an award of attorney fees as the prevailing party in the due process

19   proceeding. (Dkt. No. 47 at 1.) The IDEA provides that "[i]n any action or proceeding brought

20   under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the

21   costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C.

22   § 1415(i)(3)(B)(i)(I). To be considered a prevailing party under the IDEA, "a plaintiff must not

23   only achieve some material alteration of the legal relationship of the parties, but that change must

24   also be judicial sanctioned." *Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857,

25   865 (9th Cir. 2004). A "plaintiff is not the prevailing party if his or her success is purely

26   technical or *de minimis*." *Id.*

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT
PAGE - 5

1        It is true that Miller was successful in showing that I.M. was denied a FAPE at Chain

2 Lake Elementary. (Dkt. No. 4, Ex. 3 at 49; *see also* Dkt. No. 50.) A finding that a district denied

3 a child a FAPE is the "most significant of successes possible under the [IDEA]." *Park v.*

4 *Anaheim Union High Sch. Dist.*, 464 F.3d 1025, 1036-37 (9th Cir. 2006). Thus, this success is

5 not *de minimis.* However, as previously noted by this Court, Miller's "failure on the

6 overwhelming majority of her claims warrants a reduction in fees. . . . [T]he magnitude of FAPE

7 denial was small . . . . Further, that [Miller] was successful on only four of seventy-three issues

8 seriously detracts from her level of success." (*Miller v. Monroe Sch. Dist. et al.*, C14-1946-JCC, Dkt.

9 No. 49 at 10.) Moreover, Miller continues to litigate issues without providing factual or legal

10 authority, draining the resources available to the opposing party and this Court.

11        Accordingly, although Miller can be considered a prevailing party under the IDEA, the Court

12 exercises its discretion to narrowly limit her award of fees and costs to five percent[3] of the amount

13 incurred at the due process hearing stage. This award does not include any fees or costs expended in

14 appealing the due process decision, as Miller was not the prevailing party in that stage of litigation.

15    **D.  Motion to Dismiss Counterclaim**

16        The District's unopposed motion to voluntarily dismiss its counterclaim with prejudice

17 (Dkt. No. 50) is GRANTED. *See* Fed. R. Civ. P. 41(a)(2); W.D. Wash. Local Civ. R. 7(b)(2)

18 ("Except for motions for summary judgment, if a party fails to file papers in opposition to a

19 motion, such failure may be considered by the court as an admission that the motion has merit.").

20 **III.  CONCLUSION**

21        For the foregoing reasons, the Court DENIES the District's motion to strike (Dkt. No.

22 51); DENIES Miller's motion for summary judgment (Dkt. No. 44); GRANTS IN PART

23 Miller's motion for attorney fees (Dkt. No. 47); and GRANTS the District's motion to dismiss

24 counterclaim (Dkt. No. 50).

25

26

       [3] This corresponds with the percentage of claims on which she was successful.

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT
PAGE - 6

1    DATED this 29th day of July 2016.

2

3

4

5

6

7

8    John C. Coughenour
     UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER DENYING MOTION FOR SUMMARY
JUDGMENT
PAGE - 7